UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NECOSHIP ITALIA SPA,

                Plaintiff,

  - against -

COSMOTRADE EXPORTS SA, COSMOTRANS
NAVIGATION SA and COSMOFREIGHT INC.,

                Defendants.
------------------------------------------------------------------X

07 Civ. 8857 (JGK)

ECF CASE

OCT 1 8 2007
U.S.D.C. S.D.N.Y.
CASHIERS

## AMENDED VERIFIED COMPLAINT

Plaintiff, NECOSHIP ITALIA SPA, (hereinafter "Plaintiff") by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Amended Verified Complaint against the Defendants, COSMOTRADE EXPORTS SA ("CES"), COSMOTRANS NAVIGATION SA ("CN") and COSMOFREIGHT INC. ("CFI")(collectively referred to as "Defendants"), alleges, upon information and belief, as follows:

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*, and this Court's federal question jurisdiction, 28 United States Code § 1331.

2.     At all times material to this action, Plaintiff was, and still is, a foreign company duly organized and operating under the laws of Italy.

3.     Upon information and belief, Defendant CES was, and still is, a foreign corporation, or other business entity organized and existing under foreign law with an address in Tortola.

4. At all material times Defendant CES was the disponent Owner of the ocean going motor vessel "ORIENTAL MOON" (hereinafter the "Vessel").

5. Upon information and belief, Defendant CN was, and still is, a foreign corporation, or other business entity organized and existing under foreign law with an address in Tortola, and was, and still is, an agent of CES who is now, or will soon be, holding assets belonging to CES.

6. Upon information and belief, Defendant CFI was, and still is, a foreign corporation, or other business entity organized and existing under foreign law and was, and still is, a paying/receiving agent of CES.

7. Pursuant to a charter party dated July 6, 2007 Defendant CES chartered the Vessel to Plaintiff for a "one time charter trip West Africa to Mediterranean with logs/sawn timber/other wooden products under and on deck duration about 40-45 days without guarantee."

8. The Vessel's cargo gear is described in clause 63 of the charter party as constituting one 50MT heavy lift derrick ("jumbo derrick"), three 12MT cranes and four 12MT cranes combinable into two 20MT cranes.

9. After arriving at the first load port, Owendo, it was discovered that crane No. 4 and the jumbo derrick were inoperative and could not be used for loading.

10. At the second load port, Douala, a surveyor attended the Vessel to inspect the condition of the cranes and confirmed that both cranes were not working.

11. As a result of crane No. 4 and the jumbo derrick being inoperative, cargo could not be loaded into an area of Hold No. 4 in Douala.

12. In addition, Plaintiff's original stowage plan dated July 19, 2007 could not be implemented.

13. Originally, it was anticipated that the Vessel would call at three ports, Owendo, Douala and Port Gentil to load a quantity of 9,327 cbm of logs and sawn timber.

14. This plan was revised after crane No. 4 and the jumbo derrick were found to be inoperative and a reduced plan providing for the carriage of 9,138cbm of logs and sawn timber was implemented on July 30, 2007.

15. Defendant CES failed to provide the cranes/equipment as warranted in the charter party contract and breached clauses 22 and 101 therein.

16. As a result of Defendant CES's breach of the charter party contract, Plaintiff suffered damages including but not limited to loss of freight and time.

17. Plaintiff placed the Vessel off-hire at the load ports Owendo and Douala as a result of the breakdown of the jumbo derrick and Crane No 4. Taking this off-hire into account, Plaintiff has over-paid hire to Defendant CES in the amount of $8,508.71. *See hire statement attached hereto as Exhibit "1."*

18. Due to CES' breach of the charter party, Plaintiff also lost freight at the second load port of Doula.

19. Approximately 400 cbm of cargo could not be loaded into Hold No. 4 due to draft restrictions at Doula, as the Vessel's intended call at Port Gentil was cancelled once it became apparent that heavy logs could not be loaded there (as intended) with the jumbo derrick being out of order. The resultant freight lost by the Plaintiff totals $37,869.56.

20. Taking into account the costs that would have been incurred by Plaintiff if the Vessel called at Port Gentil, approximately $36,055.00, Plaintiff's loss of freight claim amounts to $1,814.00.

21. If the Vessel had called at Port Gentil, approximately 6,994 cbm of logs and 2,355 of sawn timber would have been loaded.

22. As a result of crane No. 4 and the jumbo derrick being inoperative, the Vessel in fact loaded about 5,414 cbm of logs and 3,739 sawn timber; approximately 1,580 less logs and 1,384 more sawn timber than originally intended.

23. As the freight obtainable by Plaintiff on sawn timber as compared to logs is less, Plaintiff suffered an additional loss of freight in the amount of $87,748.53.

24. Pursuant to the charter party contract, all disputes between the parties are to be referred to arbitration in London with English Law to apply.

25. Despite due demand, CES has failed to pay the amounts due and owing under the charter party.

26. As a result, Plaintiff is preparing to commence arbitration on its claims.

27. Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. As best as can now be estimated, Plaintiff expects to recover the following amounts in the arbitration:

|   |   |   |
|---|---|---|
| A. | Principal claim: | |
|    | Over-paid hire: | $8,508.71 |
|    | Loss of freight as stated in ¶17: | $1,814.56 |
|    | Loss of freight due to freight differential: | $87,748.53 |
| B. | Interest on claims:<br>3 years at 7%, compounded quarterly | $22,697.67 |
| C. | Estimated attorney's fees and expenses, including expert fees | $80,000.00 |
| D. | Estimated recoverable arbitration costs/expenses: | $30,000.00 |
| Total | | **$230,769.47** |

28. Upon information and belief, CES uses CFI as a "paying/receiving agent" or "pass through" entity such that it can insulate itself from creditors relating to its contracts.

29. It is not general practice in the maritime community, nor any where else, for independent companies to make or receive large payments on behalf of other independent companies.

30. Payments sent or received on behalf of another independent company are suggestive of a relationship that is not "arms length."

31. Upon information and belief, CFI receives payments on CES' behalf where CFI has absolutely no contractual obligation to CES' creditors.

32. Upon information and belief, Plaintiff was instructed that all hire payments under the above charter party were to be made to account in the name of CES.

33. Later in the charter, on August 17, 2007, after an attachment had been taken out in New York against CES, Plaintiff was instructed that Owners banking details had changed, and that all payments were to be sent to an account in the name of "Cosmofreight Inc."

34. In addition, the Defendant CN uses its name when chartering ships on CES' behalf.

35. In the clause 63 of the CES-Necoship charter party, the disponent owner of the Vessel is listed as "Cosmotrade Exports SA c/o Cosmotrans Navigation SA."

36. CN is an agent of CES, such that CN is now, or will soon be, holding assets belonging to CES, or vice versa.

37. In the further alternative, Defendants are partners and/or joint venturers.

38. In the further alternative, Defendants are affiliated companies such that CN and CFI are now, or will soon be, holding assets belonging to CES, or vice versa.

39. The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant(s) have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendants.

40. The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant(s) held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendants, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Amended Verified Complaint;

B. That the Court retain jurisdiction to compel the Defendant(s) to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C. That pursuant to 9 U.S.C. §§ 201. *et seq.* this Court recognize and confirm any judgment rendered on the claims had herein as a Judgment of this Court;

D. That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment

pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendant(s), in the amount **$230,769.47** calculated to date to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Amended Complaint;

     E.    That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court

     F.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

     G.    That this Court award Plaintiff its attorney's fees and costs of this action; and

     H.    That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: October 18, 2007
       Southport, CT

                            The Plaintiff,
                            NECOSHIP ITALIA SPA,

                            By: _____
                            Nancy R. Peterson
                            Patrick F. Lennon
                            LENNON, MURPHY & LENNON, LLC
                            420 Lexington Ave., Suite 300
                            New York, NY 10170
                            (212) 490-6050 – phone
                            (212) 490-6070 – fax
                            nrp@lenmur.com
                            pfl@lenmur.com

## ATTORNEY'S VERIFICATION

State of Connecticut  )
                      )   ss.:   Town of Southport
County of Fairfield   )

1. My name is Nancy R. Peterson.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4. I have read the foregoing Amended Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated:      October 18, 2007
            Southport, CT

                                            _____
                                            Nancy R. Peterson

EXHIBIT "1"

M/V ORIENTAL MOON
TC/PARTY DATED 06/07/2007
COSMOTRANS NAVIGATION S.A./ NECOSHIP ITALIA S.P.A.

PRE-FINAL HIRE STATEMENT

| | | | | |
|---|---|---|---|---|
| FM 15/07/2007 05.45 | GMT | | | |
| TO 26/08/2007 12.30 | GMT | | | |
| DD 42 HRS 6 MINS 45 | | | DD | 42,28125 |
| OFF-HIRE LIBREVILLE (SEE REPORT VARIOUS DERRICK B/DOWN) | | | DD | 0,259113 |
| OFF-HIRE DOUALA (SEE REPORT VARIOUS DERRICK B/DOWN) | | | DD | 0,196960 |
| OFF-HIRE LIBREVILLE (DUE TO CRANE NR. 4 OUT OF ORDER) | | | DD | 0,843750 |
| OFF-HIRE DOUALA (DUE TO CRANE NR. 4 OUT OF ORDER) | | | DD | 1,453125 |
| TIME FOR SHIFTING VSL AT DOUALA SEE ATTACHED REPORT (DUE TO CR. NR. 4 B/DOWN) | 4 HRS | | DD | 0,166670 |
| OFF-HIRE ON SAILING DOUALA DUE TO ENGINE PROBLEM | | | DD | 0,906250 |
| OFF-HIRE FOR STOPPAGE AT DAKAR FOR DISEMBARKING STOWAWYS | | | DD | 0,541670 |
| TIME LOST FOR VSL DEVIATION AT DAKAR FOR STOWAWAYS DISEMBARKING DEVIATION ON COURSE 39 NM/12KNOTS/24 | | | DD | 0,135400 |
| TOTAL | | | DD | 37,778312 |
| DD 37,778312 X US$ 12.000,00/DAY | | | US$ | 453.339,74 |
| LESS 3,75% BROK./ADDR. COMM. | | US$ 17.000,24 | | |
| BUNKER ON DELIVERY: IFO M/T 387,5882 X US$ 410/TON | | | US$ | 158.911,16 |
| MGO M/T 103,5692 X US$ 710/TON | | | US$ | 73.534,13 |
| BUNKER ON REDELIVERY: IFO M/T 418,647 X US$ 410/TON | | US$ 171.645,27 | | |
| MGO M/T 110,941 X US$ 710/TON | | US$ 78.768,11 | | |
| BUNKER CONSUMED DURING OFF-HIRE LIBREVILLE MGO M/T 2 X DD 0,2591130 X US$ 710/TON | | US$ 367,94 | | |
| BUNKER CONSUMED DURING OFF-HIRE LIBREVILLE (DUE TO CR. NR. 4 OUT OF ORDER) MGO M/T 2 X DD 0,84375 X US$ 710/TON | | US$ 1.198,13 | | |
| BUNKER CONSUMED DURING OFF-HIRE DOUALA (DUE TO CR. NR. 4 OUT OF ORDER) MGO M/T 2 X DD 1,453125 X US$ 710/TON | | US$ 2.063,44 | | |
| BUNKER CONSUMED DURING OFF-HIRE DOUALA MGO M/T 2 X DD 0,1969600 X US$ 710/TON | | US$ 279,68 | | |
| BUNKER CONSUMED DURING VSL'S SHIFTING AT DOUALA MGO M/T 2,5 X DD 0,166670 X US$ 710/TON | | US$ 295,84 | | |
| BUNKER CONSUMED DURING VSL'S OFF-HIRE ON ON SAILING DOUALA AS PER MASTER DECL. MGO M/T 2,9 X US$ 710/TON | | US$ 2.059,00 | | |

| | | | | |
|---|---|---|---|---|
| BUNKER CONSUMED DURING VSL'S OFF-HIRE ALONG VSL DEVIATION TO DAKAR MGO M/T 2,00 X US$ 710/TON | | US$ | 1.420,00 | |
| BUNKER CONSUMED DURING DEVIATION TO DAKAR IFO M/T 23 X DD 0,1354 X US$ 410/TON MGO M/T 2,5 X DD 0,1354 X US$ 710/TON | | US$ US$ | 1.276,82 240,34 | |
| ESTIMATED COSTS FOR SHIFTING VSL AT DOUALA (DUE TO CR. NR. 4 B/DOWN) (SEE ATTACHED AGENTS' MSG) FCFA 3.332.000/655,957= € 5.079,60 | | US$ | 6.960,07 | |
| **EST. OWNERS' EXPENSES:** | | | | |
| LIBREVILLE EUR 1.951,35 = US$ 2.692,86 + 2.5% COMM. | | US$ | 2.760,18 | |
| DOUALA EUR 1.574,80 = US$ 2.157,80 + 2.5% COMM. | | US$ | 2.211,75 | |
| LAS PALMAS (SEE ATTACHED AGENTS' REPORT) EUR 144,45 = US$ 197,17 + 2,5% COMM. | | US$ | 202,10 | |
| SAGUNTO EUR 1.806,84 = US$ 2.435,57 + 2.5% COMM. | | US$ | 2.496,46 | |
| SETE EUR 827,09 = US$ 1.114,34 + 2.5% COMM. | | US$ | 1.142,20 | |
| LIVORNO (SEE ATTACHED AGENTS' REPORT) EUR 550,00 = US$ 747,02 + 2,5% COMM. | | US$ | 765,70 | |
| **CHARTERERS' EXPENSES:** | | | | |
| ILOHC (CL. 55 TC/P) | | | | US$ 3.500,00 |
| GRATITUDES (CL. 72 TC/P) US$ 1.500,00/MONTH/PRO-RATA | | | | US$ 1.888,92 |
| **CHARTERERS' PAYMENTS:** | | | | |
| 1ST HIRE STATEMENT | 406.554,40 | US$ | 406.529,40 | |
| | | US$ | 699.682,67 | US$ 691.173,95 |
| BALANCE DUE TO OWNERS | | US$ - | 8.508,71 | |