Cardillo & Corbett
Attorneys for Defendant
COSMOTRADE EXPORTS SA
29 Broadway
New York, New York 10006
Tel: (212) 344-0464
Fax: (212) 797-1212
James P. Rau (JR 7209)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
NECOSHIP ITALIA SPA,                    :

                        Plaintiff,     :     07 Civ. 8857 (JGK)

                                       :       ECF

                                       :

        -against-                      :

                                       :     **AFFIDAVIT OF**
                                       :     **JAMES P. RAU**

COSMOTRADE EXPORTS SA,                 :
COSMOTRANS NAVIGATION SA and           :
COSMOFREIGHT INC.,                     :

                                       :

                        Defendants.   :
--------------------------------x

STATE OF NEW YORK    )
                     )  ss:
COUNTY OF NEW YORK   )


        JAMES P. RAU, being duly sworn, deposes and says as
follows:

        1.   I am a member of the bar of this court, a member
of the law firm of Cardillo & Corbett, counsel for Defendant
Cosmotrade Exports SA ("Cosmotrade"), and am fully familiar
with the facts and proceedings herein.

        2.   This affidavit is submitted in support of
Cosmotrade's motion for an order directing the plaintiff,
Necoship Italia SPA ("Necoship"), to provide counter-security

for Cosmotrade's counterclaim, and ordering that if Necoship fails to comply within ten (10) business days of such order, then the attachment of defendants' funds shall be vacated and the funds released.

3.    This admiralty action was commenced by Necoship to obtain Process of Maritime Attachment and Garnishment under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. Based on its Verified Complaint, Necoship obtained an ex parte Order for the issuance of Process of Maritime Attachment and Garnishment in the sum of $230,769.47, including estimated future interest, attorneys' fees and arbitration costs and expenses.  Necoship has advised that it has restrained the full amount of its claim.

4.    Necoship's claim arises out of a charter party of the M/V ORIENTAL MOON (the "Vessel"), in which Cosmotrade was the disponent owner and Necoship was the charterer.  A copy of the Amended Verified Complaint is annexed hereto as Exhibit A.

5.    Cosmotrade has a counterclaim against Necoship for $163,782.50 for the time and costs of repairs of stevedore damage to the Vessel arising under the same charter party, including interest at the same rate and period as in Necoship's complaint and the same estimates for attorneys' fees and arbitration costs.  A copy of the Verified Answer and

2

Counterclaim ("Counterclaim") is annexed hereto as Exhibit B.

6. The parties agree that the merits of the claims and counterclaims are subject to arbitration in London and have reserved their rights to arbitrate said claims.

7. In an effort to have plaintiff voluntarily post security and to avoid motion practice, I provided to counsel for Necoship, at her request, documentation supporting Cosmotrade's counterclaim as alleged in its Counterclaim. A copy of the documents provided to counsel are annexed hereto as Exhibit C. Unfortunately, this effort did not succeed, thereby requiring the present motion. A copy of the Answer to Counterclaim and Affirmative Defenses is annexed hereto as Exhibit D.

WHEREFORE Cosmotrade requests that an order be entered requiring Necoship to provide a bond or other satisfactory security in the amount of Cosmotrade's counterclaim and vacating the attachment of Defendants' funds if Necoship does not provide such counter-security within ten business days of the order.

_____
James P. Rau (JR7209)

Sworn to before me
this 21st day of April, 2008

_____
NOTARY PUBLIC

CHRISTOPHIL B. COSTAS
Notary Public, State of New York
No. 31-0773693
Qualified in New York County
Commission Expires April 30, 2011

3

# EXHIBIT

# A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

NECOSHIP ITALIA SPA,

                         Plaintiff,

        - against -

COSMOTRADE EXPORTS SA, COSMOTRANS
NAVIGATION SA and COSMOFREIGHT INC.,

                         Defendants.

-----------------------------------------------------------------X

07 Civ. 8857 (JGK)

ECF CASE

OCT 1 8 2007

U.S.D.C. S.D. N.Y.
CASHIERS

## AMENDED VERIFIED COMPLAINT

    Plaintiff, NECOSHIP ITALIA SPA, (hereinafter "Plaintiff") by and through its attorneys,

Lennon, Murphy & Lennon, LLC, as and for its Amended Verified Complaint against the

Defendants, COSMOTRADE EXPORTS SA ("CES"), COSMOTRANS NAVIGATION SA

("CN") and COSMOFREIGHT INC. ("CFI")(collectively referred to as "Defendants"), alleges,

upon information and belief, as follows:

    1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333.  Jurisdiction over this

matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*,

and this Court's federal question jurisdiction, 28 United States Code § 1331.

    2.     At all times material to this action, Plaintiff was, and still is, a foreign

company duly organized and operating under the laws of Italy.

    3.     Upon information and belief, Defendant CES was, and still is, a foreign

corporation, or other business entity organized and existing under foreign law with an address in

Tortola.

4.    At all material times Defendant CES was the disponent Owner of the ocean going motor vessel "ORIENTAL MOON" (hereinafter the "Vessel").

5.    Upon information and belief, Defendant CN was, and still is, a foreign corporation, or other business entity organized and existing under foreign law with an address in Tortola, and was, and still is, an agent of CES who is now, or will soon be, holding assets belonging to CES.

6.    Upon information and belief, Defendant CFI was, and still is, a foreign corporation, or other business entity organized and existing under foreign law and was, and still is, a paying/receiving agent of CES.

7.    Pursuant to a charter party dated July 6, 2007 Defendant CES chartered the Vessel to Plaintiff for a "one time charter trip West Africa to Mediterranean with logs/sawn timber/other wooden products under and on deck duration about 40-45 days without guarantee."

8.    The Vessel's cargo gear is described in clause 63 of the charter party as constituting one 50MT heavy lift derrick ("jumbo derrick"), three 12MT cranes and four 12MT cranes combinable into two 20MT cranes.

9.    After arriving at the first load port, Owendo, it was discovered that crane No. 4 and the jumbo derrick were inoperative and could not be used for loading.

10.    At the second load port, Douala, a surveyor attended the Vessel to inspect the condition of the cranes and confirmed that both cranes were not working.

11.    As a result of crane No. 4 and the jumbo derrick being inoperative, cargo could not be loaded into an area of Hold No. 4 in Douala.

12.    In addition, Plaintiff's original stowage plan dated July 19, 2007 could not be implemented.

2

13. Originally, it was anticipated that the Vessel would call at three ports, Owendo, Douala and Port Gentil to load a quantity of 9,327 cbm of logs and sawn timber.

14. This plan was revised after crane No. 4 and the jumbo derrick were found to be inoperative and a reduced plan providing for the carriage of 9,138cbm of logs and sawn timber was implemented on July 30, 2007.

15. Defendant CES failed to provide the cranes/equipment as warranted in the charter party contract and breached clauses 22 and 101 therein.

16. As a result of Defendant CES's breach of the charter party contract, Plaintiff suffered damages including but not limited to loss of freight and time.

17. Plaintiff placed the Vessel off-hire at the load ports Owendo and Douala as a result of the breakdown of the jumbo derrick and Crane No 4. Taking this off-hire into account, Plaintiff has over-paid hire to Defendant CES in the amount of $8,508.71. *See hire statement attached hereto as Exhibit "1."*

18. Due to CES' breach of the charter party, Plaintiff also lost freight at the second load port of Doula.

19. Approximately 400 cbm of cargo could not be loaded into Hold No. 4 due to draft restrictions at Doula, as the Vessel's intended call at Port Gentil was cancelled once it became apparent that heavy logs could not be loaded there (as intended) with the jumbo derrick being out of order. The resultant freight lost by the Plaintiff totals $37,869.56.

20. Taking into account the costs that would have been incurred by Plaintiff if the Vessel called at Port Gentil, approximately $36,055.00, Plaintiff's loss of freight claim amounts to $1,814.00.

3

21.    If the Vessel had called at Port Gentil, approximately 6,994 cbm of logs and 2,355 of sawn timber would have been loaded.

22.    As a result of crane No. 4 and the jumbo derrick being inoperative, the Vessel in fact loaded about 5,414 cbm of logs and 3,739 sawn timber; approximately 1,580 less logs and 1,384 more sawn timber than originally intended.

23.    As the freight obtainable by Plaintiff on sawn timber as compared to logs is less, Plaintiff suffered an additional loss of freight in the amount of $87,748.53.

24.    Pursuant to the charter party contract, all disputes between the parties are to be referred to arbitration in London with English Law to apply.

25.    Despite due demand, CES has failed to pay the amounts due and owing under the charter party.

26.    As a result, Plaintiff is preparing to commence arbitration on its claims.

27.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law.  As best as can now be estimated, Plaintiff expects to recover the following amounts in the arbitration:

| | | | |
|---|---|---|---|
| A. | Principal claim: | | |
| | Over-paid hire: | | $8,508.71 |
| | Loss of freight as stated in ¶17: | | $1,814.56 |
| | Loss of freight due to freight differential: | | $87,748.53 |
| B. | Interest on claims:<br>3 years at 7%, compounded quarterly | | $22,697.67 |
| C. | Estimated attorney's fees and expenses,<br>including expert fees | | $80,000.00 |
| D. | Estimated recoverable arbitration costs/expenses: | | $30,000.00 |
| Total | | | **$230,769.47** |

28.    Upon information and belief, CES uses CFI as a "paying/receiving agent" or "pass through" entity such that it can insulate itself from creditors relating to its contracts.

29.    It is not general practice in the maritime community, nor any where else, for independent companies to make or receive large payments on behalf of other independent companies.

30.    Payments sent or received on behalf of another independent company are suggestive of a relationship that is not "arms length."

31.    Upon information and belief, CFI receives payments on CES' behalf where CFI has absolutely no contractual obligation to CES' creditors.

32.    Upon information and belief, Plaintiff was instructed that all hire payments under the above charter party were to be made to account in the name of CES.

33.    Later in the charter, on August 17, 2007, after an attachment had been taken out in New York against CES, Plaintiff was instructed that Owners banking details had changed, and that all payments were to be sent to an account in the name of "Cosmofreight Inc."

34.    In addition, the Defendant CN uses its name when chartering ships on CES' behalf.

35.    In the clause 63 of the CES-Necoship charter party, the disponent owner of the Vessel is listed as "Cosmotrade Exports SA c/o Cosmotrans Navigation SA."

36.    CN is an agent of CES, such that CN is now, or will soon be, holding assets belonging to CES, or vice versa.

37.    In the further alternative, Defendants are partners and/or joint venturers.

38.    In the further alternative, Defendants are affiliated companies such that CN and CFI are now, or will soon be, holding assets belonging to CES, or vice versa.

39.    The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant(s) have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendants.

40.    The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant(s) held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendants, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Amended Verified Complaint;

B.    That the Court retain jurisdiction to compel the Defendant(s) to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C.    That pursuant to 9 U.S.C. §§ 201. *et seq.* this Court recognize and confirm any judgment rendered on the claims had herein as a Judgment of this Court;

D.    That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment

pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also

pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels,

credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any

other funds held by any garnishee within the District which are due and owing to the

Defendant(s), in the amount **$230,769.47** calculated to date to secure the Plaintiff's claims, and

that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental

Admiralty Rule B answer the matters alleged in the Amended Complaint;

     E.     That this Court recognize and confirm any arbitration award(s) or judgment(s)

rendered on the claims set forth herein as a Judgment of this Court

     F.     That this Court retain jurisdiction over this matter through the entry of any

judgment or award associated with any of the claims currently pending, or which may be

initiated in the future, including any appeals thereof;

     G.     That this Court award Plaintiff its attorney's fees and costs of this action; and

     H.     That the Plaintiff have such other, further and different relief as the Court

may deem just and proper.

Dated: October 18, 2007
       Southport, CT

               The Plaintiff,
               NECOSHIP ITALIA SPA,

          By:
               Nancy R. Peterson
               Patrick F. Lennon
               LENNON, MURPHY & LENNON, LLC
               420 Lexington Ave., Suite 300
               New York, NY 10170
               (212) 490-6050 – phone
               (212) 490-6070 – fax
               nrp@lenmur.com
               pfl@lenmur.com

## **ATTORNEY'S VERIFICATION**

State of Connecticut  )
                     )    ss.:    Town of Southport
County of Fairfield   )

1.      My name is Nancy R. Peterson.

2.      I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.      I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4.      I have read the foregoing Amended Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.      The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.      The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7.      I am authorized to make this Verification on behalf of the Plaintiff.

Dated:        October 18, 2007
              Southport, CT

Nancy R. Peterson

8

EXHIBIT "1"

M/V ORIENTAL MOON
TC/PARTY DATED 06/07/2007
COSMOTRANS NAVIGATION S.A./ NECOSHIP ITALIA S.P.A.

PRE-FINAL HIRE STATEMENT

| | | | | | |
|---|---|---|---|---|---|
| FM 15/07/2007 05.45 | GMT | | | | |
| TO 26/08/2007 12.30 | GMT | | | | |
| DD 42 HRS 6 MINS 45 | | | | DD | 42,28125 |
| OFF-HIRE LIBREVILLE (SEE REPORT VARIOUS DERRICK B/DOWN) | | | | DD | 0,259113 |
| OFF-HIRE DOUALA (SEE REPORT VARIOUS DERRICK B/DOWN) | | | | DD | 0,196960 |
| OFF-HIRE LIBREVILLE (DUE TO CRANE NR. 4 OUT OF ORDER) | | | | DD | 0,843750 |
| OFF-HIRE DOUALA (DUE TO CRANE NR. 4 OUT OF ORDER) | | | | DD | 1,453125 |
| TIME FOR SHIFTING VSL AT DOUALA SEE ATTACHED REPORT (DUE TO CR. NR. 4 B/DOWN) | | 4 HRS | | DD | 0,166670 |
| OFF-HIRE ON SAILING DOUALA DUE TO ENGINE PROBLEM | | | | DD | 0,906250 |
| OFF-HIRE FOR STOPPAGE AT DAKAR FOR DISEMBARKING STOWAWYS | | | | DD | 0,541670 |
| TIME LOST FOR VSL DEVIATION AT DAKAR FOR STOWAWAYS DISEMBARKING DEVIATION ON COURSE 39 NM/12KNOTS/24 | | | | DD | 0,135400 |
| TOTAL | | | | DD | 37,778312 |
| DD 37,778312 X US$ 12.000,00/DAY | | | | US$ | 453.339,74 |
| LESS 3,75% BROK./ADDR. COMM. | | US$ | 17.000,24 | | |
| BUNKER ON DELIVERY: | | | | | |
| IFO M/T 387,5882 X US$ 410/TON | | | | US$ | 158.911,16 |
| MGO M/T 103,5692 X US$ 710/TON | | | | US$ | 73.534,13 |
| BUNKER ON REDELIVERY: | | | | | |
| IFO M/T 418,647 X US$ 410/TON | | US$ | 171.645,27 | | |
| MGO M/T 110,941 X US$ 710/TON | | US$ | 78.768,11 | | |
| BUNKER CONSUMED DURING OFF-HIRE LIBREVILLE MGO M/T 2 X DD 0,2591130 X US$ 710/TON | | US$ | 367,94 | | |
| BUNKER CONSUMED DURING OFF-HIRE LIBREVILLE (DUE TO CR. NR. 4 OUT OF ORDER) MGO M/T 2 X DD 0,84375 X US$ 710/TON | | US$ | 1.198,13 | | |
| BUNKER CONSUMED DURING OFF-HIRE DOUALA (DUE TO CR. NR. 4 OUT OF ORDER) MGO M/T 2 X DD 1,453125 X US$ 710/TON | | US$ | 2.063,44 | | |
| BUNKER CONSUMED DURING OFF-HIRE DOUALA MGO M/T 2 X DD 0,1969600 X US$ 710/TON | | US$ | 279,68 | | |
| BUNKER CONSUMED DURING VSL'S SHIFTING AT DOUALA MGO M/T 2,5 X DD 0,166670 X US$ 710/TON | | US$ | 295,84 | | |
| BUNKER CONSUMED DURING VSL'S OFF-HIRE ON ON SAILING DOUALA AS PER MASTER DECL. MGO M/T 2,9 X US$ 710/TON | | US$ | 2.059,00 | | |

| | | | |
|---|---|---|---|
| BUNKER CONSUMED DURING VSL'S OFF-HIRE<br>ALONG VSL DEVIATION TO DAKAR<br>MGO M/T 2,00 X US$ 710/TON | US$ | 1.420,00 | |
| BUNKER CONSUMED DURING DEVIATION TO DAKAR<br>IFO M/T 23 X DD 0,1354 X US$ 410/TON<br>MGO M/T 2,5 X DD 0,1354 X US$ 710/TON | US$<br>US$ | 1.276,82<br>240,34 | |
| ESTIMATED COSTS FOR SHIFTING VSL AT<br>DOUALA (DUE TO CR. NR. 4 B/DOWN)<br>(SEE ATTACHED AGENTS' MSG)<br>FCFA 3.332.000/655,957= € 5,079,60 | US$ | 6.960,07 | |

**EST. OWNERS' EXPENSES:**

| | | | |
|---|---|---|---|
| LIBREVILLE<br>EUR 1.951,35 = US$ 2.692,86 + 2.5% COMM. | US$ | 2.760,18 | |
| DOUALA<br>EUR 1.574,80 = US$ 2.157,80 + 2.5% COMM. | US$ | 2.211,75 | |
| LAS PALMAS<br>(SEE ATTACHED AGENTS' REPORT)<br>EUR 144,45 = US$ 197,17 + 2,5% COMM. | US$ | 202,10 | |
| SAGUNTO<br>EUR 1.806,84 = US$ 2.435,57 + 2.5% COMM. | US$ | 2.496,46 | |
| SETE<br>EUR 827,09 = US$ 1.114,34 + 2.5% COMM. | US$ | 1.142,20 | |
| LIVORNO<br>(SEE ATTACHED AGENTS' REPORT)<br>EUR 550,00 = US$ 747,02 + 2,5% COMM. | US$ | 765,70 | |

**CHARTERERS' EXPENSES:**

| | | | |
|---|---|---|---|
| ILOHC (CL. 55 TC/P) | | US$ | 3.500,00 |
| GRATITUDES (CL. 72 TC/P)<br>US$ 1.500,00/MONTH/PRO-RATA | | US$ | 1.888,92 |

**CHARTERERS' PAYMENTS:**

| | | | | |
|---|---|---|---|---|
| 1ST HIRE STATEMENT | 406.554,40 | US$ | 406.529,40 | |
| | | US$ | 699.682,67 | US$ 691.173,95 |

**BALANCE DUE TO OWNERS**      US$ - 8.508,71

# EXHIBIT

# B

Cardillo & Corbett
Attorneys for Defendant
COSMOTRADE EXPORTS SA
29 Broadway
New York, New York 10006
Tel: (212) 344-0464
James P. Rau (JR-7209)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
NECOSHIP ITALIA SPA,                      :      07 Civ. 8857 (JGK)

                    Plaintiff,            :             **EFC**

            -against-                     :        **VERIFIED ANSWER**
                                                   **AND COUNTERCLAIM**

COSMOTRADE EXPORTS SA,                    :
COSMOTRANS NAVIGATION SA and
COSMOFREIGHT INC.,                        :

                    Defendants.      :
--------------------------------x

          Defendant, COSMOTRADE EXPORTS SA (hereinafter

referred to as "Defendant"), by and through its attorneys,

Cardillo & Corbett, as and for its Answer to the Amended

Complaint of NECOSHIP ITALIA SPA (hereinafter referred to as

"Plaintiff"), and as and for its counterclaim against

Plaintiff, alleges, upon information and belief, as follows:

          1.    Admits the allegations of paragraph 1 of the

Complaint.

          2.    Denies knowledge or information sufficient to

form a belief as to the truth of the allegations of paragraph 2

of the Complaint.

          3.    Admits the allegations of paragraph 3 of the

Complaint.

4.    Admits the allegations of paragraph 4 of the Complaint.

5.    Denies the allegations of paragraph 5 of the complaint, except admits that Cosmotrans Navigation SA sometimes acted as an agent of Defendant.

6.    Denies the allegations of paragraph 6 of the complaint.

7.    Admits the allegations of paragraph 7 of the Complaint.

8.    Denies the allegations of paragraph 8 of the Complaint, except admits that the charter party contains a description of the cargo gear.

9.    Denies the allegations of paragraph 9 of the Complaint, except admits that there were some stoppages with respect to these two cranes.

10.    Denies the allegations of paragraph 10 of the Complaint, except admits that there were some stoppages with respect to these two cranes.

11.    Denies the allegations of paragraph 11 of the Complaint.

12.    Denies the allegations of paragraph 12 of the Complaint.

13.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph

2

13 of the Complaint.

   14. Denies the allegations of paragraph 14 of the Complaint.

   15. Denies the allegations of paragraph 15 of the Complaint.

   16. Denies the allegations of paragraph 16 of the Complaint.

   17. Denies the allegations of paragraph 17 of the Complaint.

   18. Denies the allegations of paragraph 18 of the Complaint.

   19. Denies the allegations of paragraph 19 of the Complaint.

   20. Denies the allegations of paragraph 20 of the Complaint.

   21. Denies the allegations of paragraph 21 of the Complaint.

   22. Denies the allegations of paragraph 22 of the Complaint.

   23. Denies the allegations of paragraph 23 of the Complaint.

   24. Admits the allegations of paragraph 24 of the Complaint.

25.  Denies the allegations of paragraph 25 of the Complaint.

26.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26 of the Complaint.

27.  Admits that interest, costs and attorneys' fees are routinely awarded in London arbitration, and except as so admitted denies the remaining allegations of paragraph 27 of the Complaint.

28.  Denies the allegations of paragraph 28 of the Complaint.

29.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29 of the Complaint.

30.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 30 of the Complaint.

31.  Denies the allegations of paragraph 31 of the complaint.

32.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32 of the Complaint.

33.  Denies the allegations of paragraph 33 of the Complaint, except admits that payments were made to

Cosmofreight Inc.

34.    Denies the allegations of paragraph 34 of the complaint.

35.    Denies the allegations of paragraph 35 of the Complaint, except admits that the charter party contains a description of the disponet owner of the Vessel.

36.    Denies the allegations of paragraph 36 of the complaint.

37.    Denies the allegations of paragraph 37 of the complaint.

38.    Denies the allegations of paragraph 38 of the complaint.

39.    Paragraph 39 of the Complaint is a legal conclusion that does not require an Answer.

40.    Paragraph 40 of the Complaint is a legal conclusion that does not require an Answer.

### AS AN AFFIRMATIVE DEFENSE

41.    Defendant reserves the right to submit all claims to arbitration in London and to have this action stayed pending arbitration.

### AS A COUNTERCLAIM

42.    Pursuant to the terms of the Charter Party dated July 6, 2007 (the "Charter") between Plaintiff and Defendant, Plaintiff was responsible to pay for any and all

5

stevedore damage to the M/V ORIENTAL MOON (the "Vessel"),
including the time and expenses for any such repairs.

43. On or about August 20, 2007 during the
discharge of the Vessel in the port of Sete, the stevedores
handling the shore crane dropped some of the cargo, damaging
the hatch coaming and rails on the port side of the Vessel.

44. The Master by Stevedore Damage Report dated
August 20, 2007, notified Plaintiff and their agents of the
above described stevedore damage.

45. Following discharge the Vessel deviated to
Piraeus, Greece where she underwent repairs of the stevedore
damage during the period of August 28, 2007-September 1, 2007.

46. The total time lost to Defendant for the
deviation and repair of the stevedore damage was 3.26 days.
The resultant loss of hire to Defendant totals $37,663.04,
representing the time charter rate under the Charter Party of
$12,000 per day x 3.26 days (less commissions).

47. The cost of repairs for the stevedore damage
was $32,280.68, which Defendant has paid to the head owner of
the Vessel and for which loss it is entitled to recover from
Plaintiff who is responsible for said damage under the Charter
Party.

48. In addition, Defendant has incurred the costs
of additional bunkers (fuel oil) during the deviation to

6

Greece for the repairs in the sum of $7598.27.

49.  As a consequence of the aforesaid stevedore damage to the Vessel, Defendant has suffered damages in the amount of $77,541.99.

50.  After giving Plaintiff credit for amounts paid as reflected in Defendants' prefinal hire statement to it, the amount due and outstanding to Defendant for the above stevedore damage is $69,197.11.

51.  Despite due demand, Plaintiff has failed to pay or otherwise secure Defendant's claim.

52.  Interest, costs, attorneys' fees and arbitrators' fees are routinely awarded to the prevailing party in London arbitration.  As best as now can be estimated, Defendant expects to recover the following amounts in the arbitration:

| | | |
|---|---|---|
| A. Principal Claim | $69,197.11 |
| B. Interest | $14,531.39 |
| C. Attorneys' fees'/expenses | $80,000.00 |
| D. Arbitrators' fees/expenses | $30,000.00 |
| TOTAL | $163,728.50 |

53.  This counterclaim arises out of the same transaction or occurrence with respect to which this action was originally filed.  Plaintiff has attached funds belonging

to Defendant pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, and Defendant is entitled to security for its counterclaims pursuant to Rule E(7) thereof.

**WHEREFORE**, Defendant prays:

A.  That the verified complaint be dismissed and the attachment of Defendant's property be vacated; or, alternatively,

B.  That pursuant to Rule E(7)(a), the Court order Plaintiff to give security to the Defendant for the damages demanded in the counterclaim in the sum of $163,728.50.

C. That the matter be otherwise stayed pending arbitration in London; and

D.  For such other and further relief as to this Court may seem just and equitable.

Dated:     New York, New York
           February 14, 2008


                            CARDILLO & CORBETT
                            Attorneys for Defendant
                            COSMOTRADE EXPORTS SA


                        By:_____
                            James P. Rau (JR7209)


8

## ATTORNEY'S VERIFICATION

State of New York )
                  ) ss.:
County of New York)

    1.   My name is James P. Rau.

    2.   I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

    3.   I am a partner in the firm of Cardillo & Corbett, attorneys for the Defendant.

    4.   I have read the foregoing Verified Answer and Counterclaim and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

    5.   The reason why this Verification is being made by the deponent and not by the Defendant is that the Defendant is a business organization with no officers or directors now within this District.

    6.   The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Defendant and agents and/or representatives of the Defendant.

9

7.    I am authorized to make this Verification on behalf of the Defendant.

_____
James P. Rau

Sworn to this 14th day
of February, 2008

**TULIO R. PRIETO**
Notary Public, State of New York
No. 02PR6070011
Qualified in Richmond County
Certificate Filed in New York County
Commission Expires February 19, 2010

10

# EXHIBIT
# C

**James P. Rau**

**From:**       James P. Rau [jrau@cardillocorbett.com]
**Sent:**       Tuesday, February 26, 2008 1:27 PM
**To:**         'nsiegel@lenmur.com'
**Subject:**    Necoship v. Cosmotrade et al

Dear Nancy,

Pursuant to your request and as discussed today, please find attached the following documents in connection with defendant Cosmotrade Exports SA's counterclaim and request for counter-security:

1.  Pre-final Hire Statement
2.  Stevedore Damage Report
3.  Invoice from head owners for repairs
4.  Payment receipts to Cosmotrade for the repairs

I look forward to hearing from you concerning whether your client will voluntarily put up counter-security without the need for motion practice on this issue.

Best regards,

Jim Rau

James P. Rau
Cardillo & Corbett
29 Broadway, Suite 1710
New York, NY 10006
(212) 344-0464 - Phone
(212) 797-1212 - Fax



cosmotrade
evedore damage c

The information contained in this e-mail message is privileged and confidential, and is intended only for the use of the individual named above and others who have been specifically authorized to receive such.  If the recipient is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited.  If you have received this communication in error, or if any problems occur with transmission, please notify us immediately by e-mail at <mailto:jrau@cardillocorbett.com> or telephone (212) 344-0464.  Thank you.

## PREFINAL HIRE STATEMENT

| | | | | |
|---|---|---|---|---|
| DELY | FROM | 15/7/2007 5:45 TILL | REDELY | 26/8/07 12:30 |
| PERIOD | | 11:6:45 DD:HRS:MIN | OR PERIOD | 42,281250 |
| OFF HIRE | FROM | | TILL | |
| LESS OFF HIRE PERIOD: | | 0:0:0 DD:HRS:MIN | OR PERIOD | 4,502908 |
| OFF HIRE | FROM | | TILL | |
| LESS OFF HIRE PERIOD: | | 0:0:0 DD:HRS:MIN | OR PERIOD | |
| NET PERIOD: | | | | 37,778342 |
| DAILY HIRE: | US $ 12.000,00 | | | |

### AMOUNT DUE TO OWNERS

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. NET HIRE | 37,778342 D x | | $ 12.000,00 PER DAY | | USD | $453.340,10 |
| 2. BALLAST BONUS | | | | | USD | |
| 3. BUNKERS ROB ON DELIVERY | | | | | USD | $0,00 |
| | IFO | 387,588 MT x | | $410,00 PMT | USD | $158.911,16 |
| | MDO | 103,569 MT x | | $710,00 PMT | USD | $73.534,13 |
| 4. CHRRS EXPENSES C/V/E USD | | 1500 PM/PR | | | USD | $1.888,92 |
| 5. I.L.O.H.C. | | | | | USD | $3.500,00 |
| 6. TIME LOST DUE TO DEVIATION AT PIRAEUS FOR REPAIRS 3,260869 DAYS x 12.000,00 = | | | | | USD | $39.130,43 |
| 7. LESS COMMISSION 3,75% x USD 39.130,43 = | | | | | USD | -$1.467,39 |
| 8. PLUS CHRRS EXPS C/V/E USD 1.500,00 / 30 x 3,260869 DAYS = | | | | | USD | $163,44 |
| 9. IFO CONSUMPTION DURING DEVIATION AT PIRAEUS 4,083 MTS x USD 410,00 | | | | | USD | $1.674,03 |
| 10. MGO CONSUMPTION DURING DEVIATION/REPAIRS 8,344 MTS x USD 710,00 | | | | | USD | $5.924,24 |
| 11. COST OF REPAIRS/DAS AT PIRAEUS EURO 23.366,40 | | | | | USD | $32.280,68 |
| | | | | | USD | |
| | | | | TOTAL | USD | $768.879,75 |

### LESS:

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. COMMISSION | 3,75% PCT ON | | HIRE | | USD | $17.000,25 |
| 2. COMMISSION | PCT ON | | B.BONUS | | USD | $0,00 |
| 3. BUNKERS ROB ON REDELIVERY | | | | | | |
| | IFO | 418,647 MT x | | $410,00 PMT | USD | $171.645,27 |
| | MDO | 110,941 MT x | | $710,00 PMT | USD | $78.768,11 |
| 4. HIRES PAID | 1ST | 18/7/2007 | | | USD | $406.529,40 |
| | 2ND | | | | USD | $0,00 |
| | 3RD | | | | USD | $0,00 |
| 5. COST OF SHIFTING VESSEL AT DUALA DUE TO CR. N.4 BREAKDOWN Euro 5.079,60 | | | | | USD | $6.960,07 |
| 6. OWNERS EXPENSES AT LIBREVILLE Euro 1.951,35 + 2,5% | | | | | USD | $2.760,18 |
| 7. OWNERS EXPENSES AT DUALA Euro 1.574,80 + 2,5% | | | | | USD | $2.211,75 |
| 8. OWNERS EXPENSES AT LAS PALMAS Euro 144,45 + 2,5% | | | | | USD | $202,10 |
| 9. OWNERS EXPENSES AT SAGUNTO Euro 1.806,84 + 2,5% | | | | | USD | $2.496,46 |
| 10. OWNERS EXPENSES AT SETE Euro 827,09 + 2,5% | | | | | USD | $1.142,20 |
| 11. OWNERS EXPENSES AT LIVORNO Euro 550,00 + 2,5% | | | | | USD | $765,70 |
| | | | | | USD | |
| | | | | | USD | |
| | | | | | USD | |
| 7. BUNKERS CONSUMPTION DURING OFF-HIRE | | | | | | |
| IFO: | X | | MT | $410,00 | USD | $1.276,82 |
| MDO: | | | MT | $710,00 | USD | $7.924,32 |
| MDO: | | | MT | $710,00 | USD | $0,00 |
| 8. BUNKER PRICES DIFFERENTIALS | | | | | USD | |
| | | | | TOTAL | USD | $699.682,63 |

### BALANCE DUE TO OWNERS — USD $69.197,11

## 1. OFF-HIRES DUE TO VESSEL'S CRANES VARIOUS BREAK DOWN

| | |
|---|---|
| OFF HIRE AT LIBREVILLE (DERRICK B/DOWN) | 0,259113 |
| OFF HIRE AT LIBREVILLE (CRANE No.4 OUT OF ORDER) | 0,843720 |
| OFF HIRE AT DOUALA (SHIFTING TIME DUE TO CRANE No.4 B/DOWN) | 0,166670 |
| OFF HIRE A T DOUALA  (CRANE No.4 B/DOWN) | 0,196960 |
| OFF HIRE A T DOUALA  (CRANE No.4 B/DOWN) | 1,453125 |
| OFF HIRE ON SAILING DOUALA DUE TO ENGINE PROBLEM | 0,906250 |
| OFF-HIRE FOR STOPPAGE AT DAKAR FOR DISEMBARKING STOWAWAYS | 0,541670 |
| TIME LOST FOR DEVIATION AT DAKAR DUE TO STOWAWAYS (39N.M./12KNOTS/24) | 0,135400 |

**TOTAL OFF HIRES**                                  **4,502908**

## 2. BUNKERS CONSUMPTION DURING OFF-HIRES

| | |
|---|---|
| MDO CONSUMPTION AT LIBREVILLE  0,259113 X 2 MT X USD 710 = | USD   367,94 |
| MDO CONSUMPTION AT LIBREVILLE  0,843720 X 2 MT X USD 710 = | USD 1.198,08 |
| MDO CONSUMPTION AT DOUALA 0,166670 X 2,5 X USD 710 = | USD   295,84 |
| MDO CONSUMPTION AT DOUALA     1,453125 X 2,0 X USD 710 = | USD 2.063,44 |
| MDO CONSUMPTION AT DOUALA     0,196960 X 2,0 X USD 710 = | USD   279,68 |
| MDO CONSUMPT.DUE ENGINE TROUBLE AS PER MASTER 2,9 MT X 710 = | USD 2.059,00 |
| MDO CONSUMPT.DUE STOPPAGE AT DAKAR AS PER MASTER 2,0 MT X 710 = | USD 1.420,00 |
| MDO CONSUMPT. DURING DEVIATION  0,13540 X 2,5 X 710 = | USD   240,34 |

**TOTAL MDO CONSUMPTION :**                        **USD 7.924,32**

IFO CONSUMPTION DURING DEVIATION AT DAKAR 0,13540 X 23,00 X 410 =     **USD  1.276,82**

## 3. DEVIATION AT PIRAEUS FOR REPAIRS VOY. C294

DEVIATION DURATION  49 MILES : 11,5 =  4 HRS  16 MIN OR                   0,177536 DAYS
PIRAEUS CALL FM 29/08/07 14:30 HRS UP TO 01/09/07 16:30 HRS = 3 DAYS 02 HRS OR 3,083333 DAYS
                                        **TOTAL TIME LOST    3,260869 DAYS**

BUNKERS CONSUMPTION DURING DEVIATION    IFO  0,177536 x 23,00MT = 4,083 MTS

BUNKERS CONSUMPTION DURING DEVIATION    MGO 0,177536 x 2,50 MT  = 0,444 MTS
                         PLUS MANUEVERING MGO CONSUMPTION   **1,400 MTS**
             PLUS  MGO CONSUMPTION DURING REPAIRS/SAILING   **6,500 MTS**
                                        **TOTAL MGO   8,344 MTS**

4. COST OF REPAIRS/DAS AT PIRAEUS DUE TO STEVEDORES DAMAGE  EURO 23,366,40 OR USD  32.280,68

B.RGRDS
ACCS DEPT / LEFTERIS LOUTRAGOTIS

*Mansour shipping ltd.*

*M/V: Oriental Moon*
*Flag : st Vincent*                                    *Port : Sete*

*To: Stevedore co – Sete.*
*Cc: S.P.S as Agent*
*Cc:NECOSHIP ITALIA as sub-charter .*
*Cc: Cosmotrans navigation as charter.*
*Cc: Mansour shipping co.*

### *Stevedore damage report*

*The vessel arrived at Sete port at 18/08/2007 for discharging swan timbers and logs from holds no(2+4+5).*

*Commenced discharging by one gang on 20th of august 2007 at 08 00 LT from deck no(2) by using clamps.*
*when completed deck no(2) the gang shifted to the tweendeck no(4).*

*While discharging operation from tweendeck  no (4) at 09 45 LT, the shore crane handling one log from hold no (4)port side to the berth side the log felled down at the hatch coaming rail port side,causing a bending of 3.5 mtrs of the rail and damaged  2 pcs of the hatch coaming  frames.*

*So the stevedore company  have full responsibility about the damage and the vessel request to repair it before sailing    .*

*Date : 20th AUG  2007*                 *Your faithfully*
                                        *Master of m/v Oriental Moon*

*Agent :*

*Stevedore :*



# AFAMIA SHIPPING AGENCY

*ANDREAS SPIRIDIS*

## DISBURSEMENTS ACCOUNT

PIRAEUS,

OWNERS/DISPONENT OWNERS: MANSOUR SHIPPING-TARTOUS/SYRIA

VESSEL:ORIENTAL MOON    PORT:  PIRAEUS    DATE:29-8-07 TILL 1-9-07

FLAG:                    DWT:              LOA:
CALL SIGN:               GRT:              NRT:

|  | USD | EURO |
|---|---|---|
| AGENCY FEE |  | 650.00 |
| TUG IN/OUT |  | 3071.40 |
| OLP BERTH DUE |  | 240.00 |
| CUSTOM |  | 215.00 |
| PILOT DUE |  | 480.00 |
| PILOT IN/OUT |  | 100.00 |
| BERTHING PERMISSION 29/08 |  | 60.00 |
| MOORING |  | 210.00 |
| SAILING PERMISSION |  | 90.00 |
| WORK SHOP |  | 16,500.00 |
| OLP SLOPS DUES |  | 1,750.00 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
| **TOTAL** |  | **23,366.40** |

AFAMIA SHIPPING AGENCY
PIRAEUS

PAYMENT TO BE EFFECTED NET AS FOLLOWS:
EFG  EUROBANK  ERGASIAS S.A VRIONI BRANCH (076) 99 IRON  POLYTECHNIOU ,PIRAEUS
GREECE 18535.
ACCT No.(EURO)  0026007652010 0730822 IBAN No GR3202600760000520100730822
ACCT. No.(USD) 0026007658110 0058581  IBAN No GR6402600760000581100058581 ,
FAVOUR OF: MR ANDREAS SPIRIDIS. SWIFT CODE: EFGBGRAA

Tel: +3010-4102590/1, Fax: +3010-4102592, http://www.afamia.gr, e-mail: afamia@afamia.gr



**GENERAL SHIPS REPAIRS
& CONSTRUCTIONS
SIDIRONAFTIKI L.T.D.**
38 DIMOKRATIAS AV. - PERAMA
TEL : 4415921 - 4411340    FAX : 4411735
GREECE

Perama, 15 - 11, 2007

Subject : M/V Oriental Moon

Dear  Mr Spiridi,

I would like to inform you about the repairs that we had made at the
vessel from 29/08/07 till 01/09/07:
1) We had changed  6 meter of a longitudinal part at the stairboard
   part of the No 4 Cargo Hold coaming. We had used new plates,
   stiffeners, brakets, bulbflats, flanges. We had put new plate for
   the 6 meter coaming , new hatch table of the coaming , new
   stays at the longitudinal part of the coaming , new stiffeners and
   flanges were needed , openings for the hydraulic system and the
   tidiness of the cover.
2) For this repair had worked five technicians for 4 days day labor
   and overtime.

Sincerely,

George  Atsalakis

AFAMIA SHIPPING AGENCY
32-94 KOLOKOTRONI STR.
TEL.: (210) 4102590 - 1
FAX: (210) 4102592
E-MAIL:afamia@otenet.gr

Nº _____

ΑΠΟΔΕΙΞΗ ΕΙΣΠΡΑΞΗΣ

€ 16.500.—

THE UNDERSIGNED
Ο Παρακατω Υπογεγραμμενος   ANDREAS   SPYRIDIS

RECEIVED
Ελαβα Απο   FROM "COSMOTRADE EXPORTS SA"

THE AMOUNT
Το Ποσο Των Ευρω   of EUROS 16.500 (SIXTEEN THOUSAND FIVE HUNDRED)

FOR COST OF REPAIRS FOR M/V ORIENTAL MOON

Για CONDUCTED DURING   AUGUST 2007 AT PIRAEUS.

(ημερομηνία)   28/09/2007

Ο ΔΑΒΟΝ
ANDREAS SPYRIDIS
32-94 KOLOKOTRONI ST.
TEL.: (210) 4102590 -
FAX: (210) 4102592
E-MAIL:afamia@otenet.gr

antypon 2810 788199

**AFAMIA SHIPPING AGENCY**
92-94 KOLOKOTRONI STR.
TEL.: (210) 4102590 - 1
FAX: (210) 4102592
E-MAIL: afamia@otenet.gr

N°  _____

*Αποδειξη  Εισπραξης*

€  6.866,40 -

THE UNDERSIGNED
Ο Παρακατω Υπογεγραμμενος    ANDREAS SPYRIDIS

RECEIVED
Ελαβα Απο    FROM "COSMOTRADE EXPORTS SA" THE

AMOUNT
Το Ποσο Των Ευρω    OF  6,866 40 (SIXTHOUSAND EIGHT HUNDRED

SIXTYSIX AND 40/100 EUROS) COVERING DISBURSEMENT

FOR ACCOUNT COST OF PIRAEUS FOR M/V ORIENTAL

MOON DURING HER CALL AT PIRAEUS ON 29/08/07 TILL

01/09/07    (ημερομηνία)    28/09/2007

AFAMIA SHIP. AARON
92-94 KOLOKOTRONI STR.
TEL.: (210) 4102590 - 1
FAX: (210) 4102592
E-MAIL: afamia@otenet.gr

# EXHIBIT
# D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NECOSHIP ITALIA SPA,                              :
                                                  :
                              Plaintiff,          :        07 Civ. 8857 (JGK)
                                                  :
          - against -                             :        ECF CASE
                                                  :
COSMOTRADE EXPORTS SA, COSMOTRANS                 :
NAVIGATION SA and COSMOFREIGHT INC.,              :
                                                  :
                                                  :
                              Defendants.         :
------------------------------------------------------------------X

## ANSWER TO COUNTERCLAIM AND AFFIRMATIVE DEFENSES

Plaintiff, NECOSHIP ITALIA SPA ("Plaintiff"), by and through its undersigned counsel,

Lennon, Murphy & Lennon, LLC, answering the allegations set forth in Defendant

COSMOTRADE EXPORTS SA's ("Defendant") Verified Answer and Counterclaim dated

February 14, 2008 in paragraphs 42-53 ("Counterclaim"), alleges, upon information and belief,

as follows:

42.    Plaintiff admits that it entered into the Charter with Defendant, and admits that

under clause 50 of the Charter, Plaintiff (as Charterers) agreed to "pay for any and all damage to

the vessel caused by stevedores" subject to the further provisions of clause 50 and sub-clauses

50(a) and 50(b), but otherwise denies the allegations set forth in paragraph 42 of the

Counterclaim.

43.    Admits. Plaintiff further avers that the incident occurred during shifting of the

cargo by stevedores in the port of Sete which was at the request of the Master and without

Plaintiff's prior authorization or agreement.

44.    Admits.

45.     Admits that the Vessel underwent repairs during the period August 29 2007 to September 1 2007 in Piraeus, Greece after the Vessel had been redelivered by Plaintiff to Defendant under the Charter, but otherwise denies knowledge or information sufficient to form a belief as to the allegations set forth at paragraph 45 of the Counterclaim.

46.     Denies knowledge or information sufficient to form a belief as to the allegations set forth at paragraph 46 of the Counterclaim.

47.     Denies knowledge or information sufficient to form a belief as to the allegations set forth at paragraph 47 of the Counterclaim.

48.     Denies knowledge or information sufficient to form a belief as to the allegations set forth at paragraph 48 of the Counterclaim.

49.     Denies knowledge or information sufficient to form a belief as to the allegations set forth at paragraph 49 of the Counterclaim.

50.     Denied.

51.     Denies the allegations of paragraph 51, except that admits that Plaintiff has not paid Defendant for any of the alleged claims set forth in the Counterclaim.

52.     Admits that interest, costs and attorneys fees are routinely awarded in London arbitration, and except as so admitted denies the remaining allegations of paragraph 52.

53.     Calls for a legal conclusion such that no answer is required, except that admits that Plaintiff has attached funds of the Defendant pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Counterclaim fails to state a cause of action upon which relief may be granted.

### Second Affirmative Defense

Plaintiff is not liable to Defendant on the causes of action alleged in the Counterclaim.

### Third Affirmative Defense

Defendant's claims are barred by the equitable doctrine of unclean hands.

### Fourth Affirmative Defense

Defendant's claims are barred by the equitable doctrine of laches.

### Fifth Affirmative Defense

Defendant has failed to mitigate its damages.

### Sixth Affirmative Defense

Plaintiff relies upon clause 50(b) of the Charter, which provides that any and all damage to the vessel caused by stevedores that does not affect the vessel's seaworthiness and/or safety of the crew and/or the trading capabilities of the vessel, shall be repaired at Charterers' option before or after redelivery concurrently with the Owners' work and in such case, no hire and/or expense will be paid to the Owners save in the circumstances set out in clause 50(b).

### Seventh Affirmative Defense

Any damages sustained by the Defendant, as alleged in the Counterclaim, were proximately, directly or solely caused by the negligent acts of third persons over whom Plaintiff had no direction or control.

### Eighth Affirmative Defense

Defendant knowingly and intentionally assumed any and all risk inherent in the shipment of goods at issue by sea, which is a complete bar to recovery.

### Ninth Affirmative Defense

Any damages that may have been sustained by Defendant, as alleged in the Counterclaim, occurred as a direct result of Defendant's own negligent conduct, and not by any negligence of Plaintiff and as such Defendant is barred from recovery in this action.

### Tenth Affirmative Defense

Defendant is guilty of culpable conduct in the events giving rise to the claims now asserted in Defendant's Counterclaim, and its recovery, if any, must be diminished in proportion thereto.

### Eleventh Affirmative Defense

This Answer is made without waiver of any defenses or rights to arbitrate that may exist between the parties. Further, this Answer is made without waiver of Plaintiff's right to request security for the costs of posting counter-security pursuant to Rule E(2)(b).

### Twelfth Affirmative Defense

The claims for which security is sought are contingent, unaccrued, premature and/or not ripe for adjudication and should result in the denial of countersecurity.

**WHEREFORE**, Plaintiff prays:

A.    That the Court deny Defendant's request for countersecurity and dismiss Defendant's Counterclaim;

B.    That in the alternative, the Court reduce Defendant's countersecurity in its discretion;

C.    That in the further alternative, the Court grant Plaintiff additional security for the costs of posting the counter-security pursuant to Supplemental Rule E(2)(b);

D.      That the Plaintiff have such other, further and different relief as the Court

may deem just and proper.

Dated: April 8, 2008
       New York, NY

                              The Plaintiff,
                              NECOSHIP ITALIA SPA

                      By: _____
                         Patrick F. Lennon (PL 2162)
                         Nancy R. Peterson (NP 2871)
                         LENNON, MURPHY & LENNON, LLC
                         The GrayBar Building
                         420 Lexington Ave., Suite 300
                         New York, NY 10170
                         (212) 490-6050 – phone
                         (212) 490-6070 – fax
                         pfl@lenmur.com
                         nrp@lenmur.com

5

## AFFIRMATION OF SERVICE

I hereby certify that on April 8, 2008, a copy of the foregoing Answer to Counterclaim and Affirmative Defenses was filed electronically and served by FedEx, return receipt mail and/or facsimile on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By: _____

Nancy R. Peterson (NP 2871)